# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Dependency of C.G.-P. (DOB: 02/25/2004), | No. 79885-5-I consolidated with No. 79889-8-I |
| STATE OF WASHINGTON, DEPARTMENT OF CHILDREN, YOUTH AND FAMILIES, | DIVISION ONE |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| CHERYL GREEN, | |
| Appellant. | FILED: March 9, 2020 |

KORSMO, J.[1] — A mother appeals an order terminating her parental rights. We conclude that she was afforded due process, an unfit parent, and unlikely to resolve her parental deficiencies in a timely fashion. Accordingly, we affirm.

## FACTS

C.G. is the mother of a teenager, C.G.-P. The Department of Social and Health Services (Department)[2] filed a dependency petition regarding C.G.-P. in April 2017, after a school truancy officer reported the youth had not attended school since June 2016. C.G.-P., then age 13, was removed from C.G.'s care and never returned.

---

[1] Judge Kevin M. Korsmo is a Division Three judge serving with the Court of Appeals, Division One, under CAR 21(a).

[2] In July 2018, the Department of Social and Health Services transferred child welfare responsibilities to the Department of Children, Youth, and Families. RCW 43.216.906. We refer to both as "the Department" in this opinion.

C.G. agreed to the dependency in June 2017. A dispositional order was entered in July 2017. To address her parental deficiencies of mental health and/or substance use issues, these orders required C.G. to complete random urinalysis, mental health counseling, medication management, an alcohol/drug evaluation, a psychological evaluation with a parenting component, and follow all treatment recommendations. The court ordered visitation at the youth's discretion and required C.G. to keep the Department informed of her contact information.

The assigned social worker met with C.G. on multiple occasions and offered the ordered services through letters, in-person meetings, text messages, phone calls, and at a shared planning meeting. C.G. did not fully complete any of the ordered services.

The Department petitioned for termination in August 2018. Though C.G. never answered the petition, the termination action proceeded to a bench trial in April 2019. C.G. failed to appear, but both she and the youth were represented by counsel at trial. The court heard testimony from the assigned social worker, from C.G.'s mental health counselor, and considered 25 exhibits.

The social worker testified about the entry of the dependency and dispositional orders, the numerous times and methods she offered ordered services to C.G., the youth being in out-of-home care for two years, and the mother not completing the ordered services. The social worker recommended termination because C.G. had not "mitigated or eliminated the reasons" that the youth became dependent, and stated that it would take C.G. at least six months

to complete the ordered services. The social worker also informed that C.G.-P. wanted to be adopted by the foster placement and had not elected to visit C.G. since July 2018.

The mental health counselor testified to treating C.G. "very sporadically" over the past year and a half, not recalling the last time she saw C.G., C.G. being not in compliance with the mental health treatment plan, and being unaware of C.G.'s urinalysis results being "positive for amphetamines" or testing as "not human."

On April 3, 2019, the trial court adopted the facts in the termination petition as true and correct based on C.G.'s failure to file an answer, determined that the Department had proved the statutory termination factors by clear, cogent, and convincing evidence, and terminated C.G.'s parental rights.

C.G. timely appealed to this court. A panel considered the matter without oral argument.

## ANALYSIS

C.G. asserts three arguments, which we address in the order presented.

*Due Process*

First, C.G. contends that the trial court's adoption of the facts in the termination petition as "true and correct" infringed on her "rights to examine witnesses and to receive a decision based solely on evidence introduced" at the hearing, and "was based on hearsay that was purportedly inadmissible for the truth of the matter asserted but nonetheless not limited in the written findings."

In order to terminate the parent-child relationship, the Department must first establish the six elements of RCW 13.34.180(1).[3] The trial court then must find by clear, cogent, and convincing evidence that the parent is currently unfit.[4] *In re Welfare of A.B.*, 168 Wn.2d 908, 918-19, 232 P.3d 1104 (2010). The trial court's findings are entitled to great deference on review and those findings will be upheld when supported by substantial evidence.[5] *In re Dependency of K.S.C.*, 137 Wn.2d 918, 925, 976 P.2d 113 (1999).

Here, there is no indication that the trial court admitted the termination petition as an exhibit at trial or considered any of its content in making the termination findings. There is no dispute that C.G. had notice of the termination trial, that she failed to attend, that her counsel cross-examined witnesses, and that her counsel had an opportunity to present witnesses on her behalf.

Moreover, based on our review of the record, we are satisfied that substantial evidence supports the trial court's determination that the Department proved all six factors of RCW 13.34.180(1). C.G. was afforded due process below.

---

[3] The six elements are: (1) the child has been found to be dependent, (2) the court has entered a dispositional order, (3) the child has been removed from the custody of the parent for at least six months, (4) all the necessary services have been afforded to the parent to correct the parental deficiencies, (5) there is little likelihood of remedying the parental deficiencies, and (6) continuation of the parent child relationship clearly diminishes the child's prospects of permanent placement. RCW 13.34.180(1).

[4] "'Clear, cogent, and convincing' means highly probable." *In re Welfare of M.R.H.*, 145 Wn. App. 10, 24, 188 P.3d 510 (2008).

[5] Substantial evidence is that sufficient to "persuade a fair-minded, rational person of the truth of the declared premise." *In re Welfare of T.B.*, 150 Wn. App. 599, 607, 209 P.3d 497 (2009).

*Parental Fitness*

Next, C.G. argues that the Department failed to show how her alleged substance abuse rendered her a currently unfit parent.

"[A] parent has a due process right not to have the State terminate his or her relationship with a natural child in the absence of an express or implied finding that he or she, at the time of trial, is currently unfit to parent the child." *A.B.*, 168 Wn.2d at 918. To meet its burden of proof in establishing a parent is currently unfit, the Department must prove by clear, cogent, and convincing evidence that the parent's deficiencies prevent him or her from providing the child with "basic nurture, health, or safety." RCW 13.34.020.

Here, the trial court explicitly found C.G. "currently unfit to parent this child." In its oral ruling, the court made following unchallenged findings: (1) C.G. was not compliant with her mental health treatment, (2) C.G. did not follow the recommendations of her psychological evaluation, (3) C.G. did not obtain a substance abuse evaluation, and (4) C.G. "does not have the ability to make good decisions to support the best interests" of the youth. These findings are now verities. *In re Dependency of M.S.R.*, 174 Wn.2d 1, 9, 271 P.3d 234 (2012). The trial court's determination was supported by clear, cogent, and convincing evidence.

*Problems Remediable in the Near Future*

Lastly, C.G. challenges the trial court's finding concerning her ability to overcome her parenting deficiencies.

In termination proceedings, the Department must prove that there is "little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future." RCW 13.34.180(1)(e). What constitutes the "near future" depends on the child's age and placement circumstances. *In re Welfare of C.B.*, 134 Wn. App. 942, 954, 143 P.3d 846 (2006). The "near future" is a short period for a child in foster care in need of a permanent placement. *Id.*

Here, the trial court determined that the youth's future was a matter of months, not years. Ample evidence supports this finding. At the time of trial, the then 15-year-old youth had epilepsy, which was being managed by a stable foster placement. The youth was thriving in school and desired to continue learning, which was hindered when in C.G.'s care. Lastly, the youth wanted to be adopted by the foster placement and desired permanence now, as opposed to at least six months in the future. Under these circumstances, we conclude that there was little likelihood C.G. could correct her deficiencies in a future near enough to successfully and safely parent C.G.-P.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Hazelrigg, J.

Verellen, J.

- 6 -